**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| SCOTT NICHOLS, } | | |
| *Plaintiff* } | | |
| v. } | | CIVIL ACTION NO. H-05-1362 |
| } | | |
| ENTERASYS NETWORKS, INC., } | | |
| *Defendant* } | | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Defendant Enterasys Networks Inc.'s ("Enterasys") motion for summary judgment (Instrument No. 11). For the following reasons, the court **ORDERS** that Enterasys's motion is **GRANTED**.

**I. RELEVANT FACTS**

Enterasys provides companies and government agencies with computer network infrastructure products. In August 2001, Enterasys merged with Cabletron Systems Inc. ("Cabletron"). Cabletron had been Scott Nichols's ("Nichols") employer since 1997, and Nichols joined Enterasys when the two companies merged. The events that are the subject of this case occurred while Nichols was working for Cabletron.

During fiscal years 2000 and 2001, Regional Sales Managers like Nichols were paid according to a Regional Sales Manager Plan ("the Plan"). *See* Deposition Ex. 1 & 2 to Nichols Depo (Ex. 1 to Defendant's Mot. for Summ. J.). The Plan divided an employee's compensation into a base salary and a commission incentive. The section entitled Commission Incentive provides in part that:

> The Commission Incentive is a reward component over and above the base salary . . . The Commission Incentive is based on a commission rate tied to sales performance relative to annual sales objectives. A Participant earns commission on all Net Invoice and Sales Out Transactions that are within the Participant's Assignment as defined by attached Goal Sheet.

*Id.* at 2.  The plan also provided an accelerator paying a double commission on sales above a salesman's yearly quota. A goal sheet attached to the plan informed regional sales managers of their commission rate, quota, and assignments.

The plan gives management substantial control over compensation. It provides as follows:

> Territory/Quota/Account Alignment
>
> Territories will be established and quotas determined based on company objectives, sales history, territory potential, competitiveness, and other relevant factors. Sales management reserves the right to establish or adjust quotas and geographic / account assignments at anytime to provide equitable opportunities for all participants.
>
> Windfalls
>
> The spirit and intent of the Plan is to reward outstanding sales performance. To insure fair and equitable treatment of both the Company and the Participant, sales management will review any sales substantially in excess of annual quota or objective. For substantial sales adjustments (positive/negative) management reserves the right to review the impact on the Plan.
>
> Management reserves the right to make final and binding decisions regarding the amount of compensation earned and paid to any Plan Participant.

*Id.* at 3.

Nichols's fiscal year 2000 goal sheet set his commission rate at .0180% and his quota at $4.5 million. His assignment included UT Brownsville, Compaq Computer Corp., and Metricom. Nichols's "total targeted compensation," was $180,000; however, by the close of fiscal year 2000, Nichols was able to earn $897,415.

Because of this windfall, Cabletron decided to adjust Nichols's compensation in fiscal year 2001. In late April 2000, it presented him with his fiscal year 2001 plan. The new plan lowered his commission rate, increased his quota, and re-assigned some of his clients, among them UT Brownsville, Compaq Computer Corp., and Metricom. By its terms, the new plan applied retroactively to 1 March 2000.

Nichols refused to sign the new plan, and received permission from his supervisor, Nate Newman, to continue operating under the terms of the 2000 contract while he negotiated with management. Eventually, Enterasys paid Nichols partial commissions on business done with Compaq during 2001. Nichols's total compensation for fiscal year 2001 was $278,900.55.

Nichols left Enterasys in April 2002. In March 2005, he filed suit in the 125th Judicial District Court of Harris County, Texas, claiming breach of his employment agreement. Nichols claims that the fiscal year 2000 plan should apply to the work he performed during fiscal year 2001, and that he is entitled to the difference between what Enterasys paid him and what he would have earned under the 2000 plan. On 18 April 2005, Enterasys removed the case to this court based on diversity.

## II. LAW

### A. Summary Judgment

The movant seeking a federal summary judgment initially must inform the court of the basis for his motion and point out those portions of the pleadings, depositions, answers to interrogatories, and admissions on file that demonstrate the absence of a genuine issue of material fact and show that he is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant need not negate the opposing party's claims nor produce evidence showing an absence of a genuine factual issue, but may rely on the absence of evidence to support essential elements of opposing party's claims. *International Assoc. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co.*, 812 F.2d 219, 222 (5th Cir. 1987). The burden then shifts to the non-movant to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the burden of proof at trial. Fed. R. Civ. P. 56(c). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). The non-moving party may not rest on mere allegations or denials in its pleadings, but must produce affirmative evidence and specific facts. *Anderson*, 477 U.S. at 256-57. He meets this burden only if he shows that "a reasonable jury could return a verdict for the non-moving party." *Id.* at 254. A mere scintilla of evidence will not preclude granting of a motion for summary judgment. *Id.* at 252.

All reasonable inferences must be drawn in favor of the non-moving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574. 587-88 (1986), citing *United States v. Diebold*, 369 U.S. 654, 655 (1962). Once the burden of proof has shifted to the non-movant, he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. Instead he must produce evidence upon which a jury could reasonably base a verdict in his favor. *Anderson*, 477 U.S. at 249. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.*, 477 U.S. at 249-50. Moreover the non-movant must "go beyond the pleadings and by her own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." *Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir. 1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions are not competent summary judgment evidence. *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1046 (5th Cir. 1996), *citing Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(*en banc*). The non-movant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Nor is the district court required by Rule 56 to sift through the record in search

of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998), *citing Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992).

## III. APPLICATION OF LAW TO THE FACTS.

Enterasys's motion raises two issues the court will address at length.[1] The first is whether a jury could conclude that the fiscal year 2000 plan applied to the work Nichols performed during 2001. The second is whether the terms of the 2000 plan allowed Enterasys to adjust Nichols's compensation. After examining the facts and law, the court concludes that both questions should be answered affirmatively.

Texas courts have held that "[A]s a general rule . . . when one enters into the service of another for a definite period, and continues in the employment after the expiration of that period without any new contract, the presumption is that the employment is continued on the terms of the original contract, and provisions and restrictions forming essential parts of the contract . . . continue in force." *Fenno v. Jacobe*, 657 S.W.2d 844, 846 (Tex. App.– Houston [1st Dist.] 1983) (quoting *56* C.J.S. 82-83); *see also Thames v. Rotary Engineering Company*, 315 S.W.2d 589, 591 (Tex. App.– El Paso, 1958). Here, Enterasys concedes that Nichols refused to sign the 2001 Plan, and Nichols has testified he was told he could keep working under the 2000 plan. This evidence, coupled with evidence Nichols was involved in continuing negotiations with management and that Enterasys eventually paid him a portion of the Compaq commission, would support the case being submitted to a jury for a determination of whether the parties extended the 2000 plan, and, if so,

---

[1] Enterasys's claim that the statute of frauds bars Plaintiff's claim is meritless. *See Estate of Kaiser v. Gifford,* 692 S.W.2d 525 (Tex. App. 1985) ("Where one party to an oral contract has, in reliance thereon, so far performed his part of the agreement that it would be permitting a fraud on him to allow the other party to repudiate the contract and set up the statute of frauds in justification thereof, equity will regard the case as being removed from the operation of the statute, and will enforce the contract."); *see also* 4-19 Corbin on Contracts § 19.14 ("If the performance required of the plaintiff has been fully performed within one year, the great weight of authority holds that the statute has thereby been made inapplicable and the defendant's promise is enforceable just as if it were in writing.").

for how long.  This will not be necessary, however, because the terms of the 2000 contract give Enterasys discretion to adjust Nichols's compensation.

The plan, in the sections entitled Territory/Quota/Account Alignment and Windfalls, unambiguously gives management the right to "establish or adjust quotas and . . . account assignments," as well as "make final and binding decisions regarding the amount of compensation earned and paid . . ." *See Southern Natural Cas Co. v. Pursue Energy*, 781 F.2d 1079, 1081 (5th Cir. 1986) ("[T]he interpretation of an unambiguous contract is a matter of law . ..");  *see also Steuber Co. v. Hercules Inc.*, 646 F.2d 1093, 1098 (5th Cir. 1981) ("Under Texas law, the interpretation of an unambiguous contract, as well as the determination of whether or not a contract is ambiguous, is a legal question.").  The decision to lower Nichols's commission rate, raise his quota, and reassign some of his clients falls under these two provisions.  Therefore, Enterasys is entitled to judgment as a matter of law on Nichols's claim of breach of contract.

**IV. CONCLUSION**

For the aforementioned reasons, the court **ORDERS** that Defendant Enterasys's motion for summary judgment (Instrument No. 11) is **GRANTED**.

Signed at Houston, Texas, this 2nd day of May, 2006.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE